UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANNE WITTMANN                                    CIVIL ACTION

v.                                               NO. 17-9501

UNUM LIFE INSURANCE                              SECTION "F"
COMPANY OF AMERICA

ORDER AND REASONS

Before the Court are two motions: (1) the plaintiff's motion to supplement the administrative record with the Unum Benefits Center Claims Manual; and (2) the defendant's motion to strike the expert report of Dr. Davis and all exhibits not contained within the administrative record.[1]   For the reasons that follow, the plaintiff's motion to supplement is GRANTED, and the defendant's motion to strike is GRANTED, in part, as unopposed, and DENIED, in part.

**Background**

This contentious ERISA lawsuit arises out of the denial of disability benefits under a group benefits plan.

Anne Wittmann is a participant to a long-term disability insurance plan through her employment as an attorney with Baker, Donelson, Bearman, Caldwell, Berkowitz PC.   Unum Life Insurance

---

[1] In its motion to strike, the defendant also requests that this case be removed from the Court's trial docket to be decided on the parties' briefs.  Because the Court removed this matter from its trial docket in its November 30, 2018 Order, the defendant's motion is moot insofar as it seeks such relief.

Company of America serves as the underwriter of the Plan and has been delegated the discretionary authority to make benefit determinations.  Allegedly suffering from fibromyalgia, Wittmann ceased working as an attorney on December 31, 2013 and filed a claim for long-term disability benefits under the Plan[2] on April

---

[2] The Plan defines "disability" as follows:

> You are disabled when Unum determines that due to your **sickness or injury:**
> 1. You are unable to perform the **material and substantial duties** of your **regular occupation** and are not working in your regular occupation or any other occupation
> . . .
> You must be under the regular care of a physician in order to be considered disabled.

The Plan further itemizes information that a claimant must submit in order to establish such a disability.

> Proof of your claim, provided at your own expense, must show:
> - the date your disability began;
> - the existence and cause of your sickness or injury;
> - that your sickness or injury causes you to have limitations on your functioning and restrictions on your activities preventing you from performing the material and substantial duties of your regular occupation;
> - that you are under the **regular care** of a **physician . . . ."**

In addition, the Plan vests Unum with "**discretionary authority to make benefit determinations** under the Plan."  (emphasis added).  Such "[b]enefit determinations include determining eligibility for benefits and the amount of any benefits, resolving factual disputes, and interpreting and enforcing the provisions of the Plan."  The Plan further provides that "[a]ll

7, 2014.  In filing her claim, Wittmann described her medical condition as "unknown – other than fibromyalgia and pericarditis," and identified her first symptoms as "chest pain, SOB, muscle/joint pain, fatigue, lightheaded."  In addition, she listed her treating physicians as: Dr. Frank Cruz, Internal Medicine; Dr. William Davis, Rheumatologist; Dr. Robert Lizana, Chiropractor; Dr. Robert Kelly, Physician; and Dr. Charles Chester, Psychiatrist.

Thereafter, an Attending Physician's Statement dated April 15, 2014 was submitted by Dr. Cruz, Wittmann's internist.  He noted that Wittmann had an "as-yet undiagnosed [condition] characterized by fatigue, muscle and joint aches, tightness in the chest, Raynaud's phenomenon and, most recently, by cognitive dysfunction."  In response to Unum's query about Wittmann's physical and behavioral health restrictions and/or limitations, Dr. Cruz noted that she was unable to perform her usual job at that time.  A statement was also submitted by Wittmann's employer regarding her job description and duties as an attorney.  It was noted that her occupation was performed at a sedentary demand level and required frequent concentration and attention to detail.

Medical records from Wittmann's other treating physicians were also submitted.  These records were reviewed by Nora Gregory, a registered nurse; Dr. Tony Smith, a physician certified in Family

benefit determinations must be reasonable and based on the terms of the Plan and the facts and circumstances of each claim."

Medicine; and Dr. James Bress, another Unum physician certified in Internal Medicine.  Finding that Wittmann was able to perform the duties of her occupation as an attorney, Unum denied Wittmann's claim for long-term disability benefits by letter dated October 3, 2014.  In providing Wittmann with "Information That Supports Our Decision," Unum's October 3, 2014 claim denial letter states:

> It has been medically opined that you have undergone an extensive medical evaluation and testing to date with no significant abnormalities identified.  Further, it is opined that no medical data within the currently available records supports cognitive deficits.
>
> We asked a physician, board-certified in family medicine, to review your file.  The physician concluded that your records do not support Dr. Cruz's opinion that you are unable to work . . . .
>
> [T]o obtain a second opinion, a physician board-certified in internal medicine reviewed your file.  The second reviewing physician agreed with the conclusion of the first reviewing physician about your functional capacity.  The following was observed:
> - You have undergone an extensive medical evaluation and testing to date with no significant abnormalities identified.
>               . . .
> - There has been no evidence of any tender point testing to support a diagnosis of Fibromyalgia.  All testing has been normal.  There has been no evidence of pain behavior during any office visits.

That letter also advised Wittmann of her right to request an appeal, which she exercised on January 26, 2015.  In her appeal letter, Wittmann noted that Unum overlooked evidence of tender

point testing submitted by her treating physicians and misconstrued Dr. Davis's responses to Dr. Smith's questions. Wittmann also stated that she did not dispute that she could engage in sedentary employment; however, she asserted that she was unable to focus and concentrate due to her pain and fatigue. Finally, Wittmann submitted a letter dated December 10, 2014 from Dr. Chester, her psychiatrist. Dr. Chester stated that Wittmann had been diagnosed with fibromyalgia, which caused chronic fatigue and pain, and impacted her ability to concentrate and remember details. Dr. Chester went on to conclude: "I do not believe she has the capacity to function in her job as a lawyer because of the fatigue, the pain, and the lack of ability to concentrate."

On April 4, 2015, Dr. Chris Bartlett, an Unum consultant who is board certified in Family Medicine, conducted an "appeal review" of Wittmann's file. Dr. Bartlett noted that Wittmann "may or may not have Fibromyalgia, but available data does not support functional impairment from her fatigue, pain, and concentration/memory problems." By letter dated May 29, 2015, Unum advised Wittmann that it was upholding its determination that she was not entitled to benefits. Unum explained that, although Wittman "may have fibromyalgia based on reports of widespread unexplained pain," those reports "are out of proportion to the physical exams, physician observations, diagnostic tests and lab studies." According to Unum, because the available medical records

did not contain objective documentation of cognitive problems, it could not conclude that memory, focus, or other cognitive issues precluded her from performing her occupation as an attorney. Because Wittmann indicated that she had undergone neuropsychological testing, Unum advised that it would consider additional information if submitted by June 25, 2015.

About a month later, Unum received a copy of a neuropsychological evaluation performed by Dr. Michael Chafetz, Ph.D.[3]  Dr. Bartlett reviewed this new information but stated that it did not change his opinion regarding Wittmann's capacity to perform her occupation as an attorney.  He also noted that the diagnoses of depression and somatic symptom disorder, as described by Dr. Chester, would be reviewed by Dr. Jana Zimmerman, Unum's psychologist.  In reviewing Wittmann's file, Dr. Zimmerman concluded that the totality of the information indicated a

---

[3] In his report, Dr. Chafetz opined:
> The current neuropsychological findings show generally intact abilities but are highly variable even within domains . . . . [S]he is also fatigued, and is suffering from depression and poor sleep.  The poor sleep itself likely exacerbates her pain condition and her depressive symptomology, making her more distractible.  In this, she is likely in a negative spiral.  Her reported memory and concentration problems, and problems with "disconnecting" are not borne out by testing or a history of neuropathology.

psychological contribution, inclusive of depression and somatic focus, but did not rise to the level of impairment.

By letter dated July 20, 2015, Unum informed Wittmann that it was again upholding its decision.  That letter also advised:

> Unum Life Insurance Company of America has completed our review of your appeal.  No further review is available and your appeal is now closed.
> . . .
> If you disagree with this decision, you have a right to bring a civil suit under section 502(a) of the Employee Retirement Income Security Act of 1974.

On October 24, 2016, before filing suit, Wittmann submitted a disability determination by the Social Security Administration and invited Unum to reconsider its decision once again.  Enclosed with the letter was correspondence from the SSA dated October 3, 2015, informing Wittmann of her entitlement to Social Security Disability Income benefits.  Although the SSA correspondence did not explain the basis for the SSA award, Wittmann provided Unum with a copy of a Mental Status Examination performed by board-certified psychologist, Dr. William Fowler, in connection with her claim for SSDI benefits.  Dr. Fowler's report summarized Wittmann's self-reported complaints of muscle and joint pain, fatigue, and forgetfulness.  As to her functional capacity, he opined:

> She does show what is likely some decline in attention and concentration.  Persistence appears shortened and pace is slow.  Given the cognitive demands of her profession, it does

> seem that she would currently have some
> difficulty performing work related tasks,
> including ability to focus, read, retain,
> analyze, and recall information. Complaints
> of lowered energy, pain, and fibromyalgia may
> render her unable to perform even simple job
> tasks in a stable, reliable manner.

In conclusion, Dr. Fowler described his diagnostic impressions as:

> Major Depressive Episode
> Anxiety NOS
> Rule out pseudo dementia secondary to depression

Dr. Zimmerman reviewed the report and indicated that it did change her opinion because it made no mention of Dr. Fowler reviewing Wittmann's records or the neuropsychological test results from Dr. Chaftez.

By letter dated January 24, 2017, Unum granted Wittmann mental illness disability benefits from June 30, 2014 through June 30, 2016 and stated that it would investigate further to determine her entitlement to benefits beyond 24 months for a disability unrelated to mental illness.[4]  To further assess Wittmann's alleged inability to work due to a physical condition, Unum retained Hub Enterprises, Inc. to surveil Wittmann.  According to the investigator's report, Wittmann was observed receiving a package from a delivery person while standing in her doorway and walking onto her patio to move

---

[4] Pursuant to the Plan, benefits are payable through the earliest of the participant's expected retirement date or the cessation of the disability.  However, "[t]he lifetime cumulative maximum benefit period for all disabilities due to **mental illness** is 24 months."

furniture pillows.  It was also noted that Wittmann did not leave her residence during either surveillance period.  By letter dated July 31, 2017, Unum notified plaintiff's counsel that Wittmann was not entitled to additional benefits because there was "no evidence of physical/organic medical problems" that would preclude her from being able to perform her sedentary occupation as an attorney after June 30, 2016.  This letter did not discuss the results of Unum's surveillance.

On September 22, 2017, Wittmann sued Unum for the denial of her claim for physical disability benefits under her long-term disability plan, pursuant to Section 502(a)(1)(B) of the Employee Retirement Income Act of 1974.  29 U.S.C. § 1132(a)(1)(B).  Four months later, by letter dated January 25, 2018, Wittmann's counsel requested an administrative appeal of Unum's July 2017 decision. Because the request was made within the requisite 180-day appeal period, Unum agreed to consider the appeal; it then filed a motion to dismiss this lawsuit for failure to exhaust administrative remedies, or in the alternative, to stay the proceedings pending the exhaustion of administrative remedies.  Before the Court had the opportunity to consider that motion, Unum completed its administrative review, rendering the motion moot.[5]

---

[5] In considering the post-lawsuit administrative appeal, Unum retained Dr. Benjamin Kretzmann, a rheumatologist, to perform an independent medical review of Wittmann's file.  By letter dated February 28, 2018, Unum advised that Wittmann was not entitled to

Several months later, Wittmann moved to strike from the administrative record all documents generated after her complaint was filed on September 22, 2017, and Unum moved for partial summary judgment that all documents associated with Wittmann's post-litigation administrative appeal are part of the administrative record, or in the alternative, for summary judgment dismissing Wittmann's suit for failure to exhaust administrative remedies. In granting Wittmann's motion and denying Unum's motion in its October 31, 2018 Order and Reasons, this Court stated that Wittmann exhausted her administrative remedies as of July 20, 2015, and that no documents generated after September 22, 2017 would be considered in determining whether Unum abused its discretion in denying Wittmann's claim for long-term disability benefits.

Wittmann now moves to supplement the administrative record with the Unum Benefits Center Claims Manual, and Unum moves to strike the expert report of Dr. Davis, as well as all other exhibits not contained within the administrative record.[6]

_____

benefits exceeding 24 months for a disability unrelated to mental illness.

[6] Also pending before the Court are: (1) Wittmann's motion for summary judgment that Unum's denial of her claim for long-term disability benefits was arbitrary and capricious, and (2) Unum's motion for summary judgment on the administrative record. In its Order dated November 30, 2018, this Court removed this matter from its trial docket, set the motions to supplement and strike for hearing on December 12, 2018, and advised that the pending cross-motions for summary judgment would be set for resolution.

I.

According to Fifth Circuit case literature, "the administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it." Vega v. Nat'l Life Ins. Servs., 188 F.3d 287, 300 (5th Cir. 1999) (en banc), abrogated on other grounds by Metro. Life Ins. Co. v. Glenn, 554 U.S. 105 (2008). Although "the plan administrator has the obligation to identify the evidence in the administrative record[,] the claimant may then contest whether that record is complete." Id. at 299. The import of identifying the evidence that comprises the administrative record cannot be understated. Indeed, "a district court, in most cases, is limited to the administrative record when it reviews an administrator's determination." Gooden v. Provident Life & Accident Ins. Co., 250 F.3d 329, 333 (5th Cir. 2001) (citing Vega, 188 F.3d at 299). However, this general rule is subject to a handful of exceptions. First, in reviewing the merits of an administrator's claims determination, a court may consider outside evidence that (1) "relates to how the administrator has interpreted the plan in the past," or (2) "would assist the court in understanding medical terms and procedures." Crosby v. La. Health Serv. & Indem. Co., 647 F.3d 258, 263 (5th Cir. 2011) (citing Vega, 188 F.3d at 299-300). In addition, a court may look beyond the

11

administrative record "to resolve other questions raised in an ERISA action," such as a challenge to "the completeness of the administrative record; whether the plan administrator complied with ERISA's procedural regulations; and the existence and extent of a conflict created by a plan administrator's dual role in making benefits determinations and funding the plan." Id.

## II.

The Court first considers Wittmann's motion to supplement the administrative record with the Unum Benefits Center Claims Manual.

### A.

In granting Wittmann's motion to strike and denying Unum's motion for summary judgement in its October 31, 2018 Order and Reasons, this Court relied upon Vega to hold that "the administrative record in this matter closed on September 22, 2017, the date on which Wittmann filed this lawsuit." The Court also determined that the record includes all information made available to Unum before that relevant date. Wittmann now urges this Court to supplement the administrative record with versions of the Unum Manual in effect during Unum's pre-litigation review of her claim – initially in 2014; on appeal in May and July of 2015; and after her counsel submitted the SSA award of disability benefits, in late 2016 and throughout 2017. She submits that such supplementation is consistent with Fifth Circuit precedent because the 2014-2017 versions of the Manual constitute "relevant

information" that Unum had a "fair opportunity to consider" before the filing of this lawsuit.  See Vega, 188 F.3d at 300.  Wittmann also argues that, in a practical sense, the Manual contains acronym and term definitions that are crucial to interpreting the administrative record.  Finally, she contends that Unum's failure to follow specific provisions of the Manual bears on this Court's determination of whether Unum abused its discretion in denying her claim.[7]

*B.*

While not directly addressed by the Fifth Circuit, courts in other circuits have allowed ERISA claimants to supplement the administrative record with the Unum Manual or similar internal guidelines and policies.  See Glista v. Unum Life Ins. Co. of Am., 378 F.3d 113, 124 (1st Cir. 2004) ("By creating and promulgating internal guidance documents, plan administrators choose to exercise their discretion to define terms.  When courts place weight on those definitions, they do not narrow the plan administrator's discretion beyond what the administrator itself has chosen to do."); Prohkorova v. Unum Life Ins. Co. of Am., No.

---

[7] Specifically, Wittmann submits that Unum ignored or circumvented provisions contained within the following sections, among others: (1) Claim File Documentation; (2) Evaluation of Claims Based on Mental Illness; (3) Evaluation of Subjective Symptoms; (4) Functional Capacity and Occupational Demands; (5) Independent Assessments; (6) Medical Information and Resources; (7) Social Security Significant Weight; and (8) Requesting Social Security File.

17-30064-MGM, 2018 U.S. Dist. LEXIS 67548, at *14 (D. Mass. Apr. 23, 2018) ("Supplementing the A.R. with [excerpts from Unum's Claims Manual] directing claims handlers how to evaluate a disability claim that depends to a large extent on subjective claims of pain is consistent with the First Circuit's ruling in Glista."); Nelson v. Unum Life Ins. Co. of Am., 421 F. Supp. 2d 558, 573 (E.D.N.Y 2006) ("Although review of the denial of benefits is limited to the administrative record, consideration of the Unum Claims Manual is permissible, because it was also available to Unum when it was evaluating plaintiff's claim."); Cannon v. Unum Life Ins. Co. of Am., 219 F.R.D. 211, 213 (D. Me. 2004) ("Obviously, if Unum has internal memoranda or policies that instruct claim handlers how to apply the mental illness limitation, such materials are relevant to the question of whether Unum acted arbitrarily and capriciously in connection with its denial of [the plaintiff's] claim.").

*C.*

Although the Fifth Circuit has not considered a claimant or administrator's attempt to supplement the administrative record with internal guidelines or policies, this Court finds the reasoning of the above-mentioned cases from the First and Second Circuits persuasive.  More importantly, the Court agrees with Wittmann that the 2014-2017 versions of the Manual constitute "relevant information" that Unum had a "fair opportunity to

14

consider" prior to the institution of this lawsuit.  See Vega, 188 F.3d at 300.  Indeed, the deposition testimony of Jennifer Wellman, an Unum lead appeals specialist, confirms that Unum had access to – and an opportunity to consider – its own Claims Manual during its pre-litigation review of Wittmann's claim.[8]  Accordingly, rather than seeking to supplement the administrative record, Wittmann is simply challenging its completeness.  See Vega, 188 F.3d at 299 (Although "the plan administrator has the obligation to identify the evidence in the administrative record[,] the claimant may then contest whether that record is complete.").[9]

---

[8] Jennifer Wellman testified as follows regarding the Unum Benefits Center Claims Manual:

> **Q:** Is it correct, Ms. Wellman, that as a lead appeals specialist for Unum, you would follow, as applicable, the guidelines set forth in Unum's claims manual?
> **A:** Yes.
> **Q:** Do you generally refer to the Unum's claims manual throughout the time that you are working on an appeal?
> **A:** It depends.
> **Q:** What does it depend on?
> **A:** If I needed to look up something specific in the claims manual.
> **Q:** Okay.  Do you – do you not have to look up things in the claims manual because sometimes you just remember what the claims manual says?
> **A:** That could be possible.
> **Q:** But you are still adhering to your recollection of what the guidelines in the claims manual say?
> **A:** Yes.

[9] Unum correctly notes in its opposition papers that this Court's October 31, 2018 Order and Reasons states that this lawsuit

Because Wittmann has sustained her burden of establishing that the 2014-2017 versions of the Manual constitute "relevant information" that Unum had a "fair opportunity to consider" before the filing of this lawsuit, see Vega, 188 F.3d at 300, the Court finds that these documents properly form part of the administrative record.

III.

The Court next considers Unum's motion to strike the alleged expert report of Dr. Davis, as well as the exhibits included in Wittmann's "witness and exhibit list" and attached to her pleadings.[10]

*A.*

Unum first challenges the admissibility of an expert report prepared by Dr. William Davis, Wittmann's treating rheumatologist.

---

challenges Unum's October 3, 2014 denial of Wittmann's claim for long-term disability benefits, for which Wittmann exhausted her administrative remedies on July 20, 2015.  But Unum overlooks that this Court, relying on Vega, also determined that the administrative record includes all documents made available to Unum in reviewing Wittmann's claim for disability benefits prior to September 22, 2017 – the date on which Wittmann filed this lawsuit.  Thus, Unum's contention – that the only Manual that could possibly be relevant to whether Unum abused its discretion in denying benefits in October of 2014 is the 2014 Manual – is without merit.  Unum also takes issue with Wittmann's failure to allege specific "violations" of the Manual in her motion to supplement. But Wittmann need not prove "violations" of the Manual to challenge the completeness of the administrative record.  In her motion, Wittmann simply points to specific provisions ignored or circumvented by Unum as "illustrative" of Unum's arbitrary and capricious claims handling practices.

[10] Because the Court removed this matter from its trial docket subsequent to the filing of Unum's motion to strike, the motion is moot insofar as it requests such relief.

The report, dated May 1, 2018, consists of twenty questions drafted by an unidentified source and answers provided by Dr. Davis.  In responding to the questions, Dr. Davis defines medical terms, such as "tender point testing" and "pain behaviors;" identifies methods of detecting and treating fibromyalgia; and explains the nature of the condition and its diagnostic criteria.

Unum contends that the report is inadmissible because it is not contained within the administrative record, and Wittmann did not seek to supplement the record with it before filing suit. Although Unum recognizes that the Court can consider evidence outside the administrative record under limited circumstances, it submits that this report neither "relates to how the administrator has interpreted the plan in the past," nor "would assist the court in understanding medical terms and procedures."  See Crosby, 647 F.3d at 263.  Unum further notes that the report neither opines on Wittmann's diagnosis, nor discusses her restrictions and limitations or ability to work.  Accordingly, Unum argues, the report does satisfy the requirements of Federal Rule of Evidence 702, which permits an expert to "testify in the form of an opinion or otherwise" to "help the trier of fact to understand the evidence or to determine a fact in issue" *only if* "the expert has reliably applied the principles and methods to the facts of the case."

Wittmann counters that Dr. Davis's report is the "archetypical example" of evidence contemplated by the "medical

17

terms and procedures" exception.  According to Wittmann, the
report's didactic nature is particularly useful in light of Unum's
apparent lack of understanding of fibromyalgia demonstrated in its
claims denial decisions.  For example, Wittmann notes, as a basis
for its initial claims denial on October 3, 2014, Unum asserted
that there was "no evidence of any tender point testing to support
a diagnosis of Fibromyalgia."  But Wittmann maintains that the
very medical records reviewed by Unum are replete with
documentation of tender point testing, a medical term that Dr.
Davis defines in his report.

Turning to the report, Dr. Davis explains that tender point
testing involves manually testing 18 "tender points" and "asking
the patient to indicate tenderness or observing the patient grimace
or withdraw from the painful pressure."  See Report of William E.
Davis, Rec. Doc. 122-2.  Accordingly, the Court finds that Dr.
Davis's explanation of tender point testing will indeed "assist
the court in understanding medical terms and procedures" contained
within Wittmann's claim file.  See Crosby, 647 F.3d at 263.

Moreover, the Court notes that the report's failure to
introduce new evidence of Wittmann's disability or supply a novel
analysis of existing evidence is the precise reason why it is
admissible in this action.  Indeed, if the report offered an
opinion as to Wittmann's diagnosis, restrictions, or limitations,
it would contravene Crosby's central holding.  See id.  ("A plan

18

administrator is not entitled to a second chance to produce evidence demonstrating that coverage should be afforded.").

*B.*

Unum next challenges the admissibility of the contents of Wittmann's "Witness and Exhibit List," as well as all other documents attached to her pleadings, such as deposition excerpts and training documents. According to Unum, these materials are not part of the administrative record and do not fall within the "plan interpretation"[11] or "medical terms and procedures" exceptions. In taking this position, Unum overlooks three additional exceptions enumerated by the Fifth Circuit – evidence that relates to: (1) a challenge to "the completeness of the administrative record;" (2) "whether the plan administrator complied with ERISA's procedural regulations;" and (3) "the

---

[11] As to the plan interpretation exception, Unum cunningly notes that the Plan under which Wittmann seeks benefits was issued on January 1, 2014 and that she claimed to be disabled as of January 2, 2014. According to Unum, because no prior disability claims under this Plan exist, the documents Wittmann seeks to introduce cannot possibly relate to how *this* Plan was interpreted before she claimed disability benefits thereunder.
   Wittmann counters that a narrow reading of the plan interpretation exception would defeat its purpose, precluding courts from considering evidence of past interpretations of identical – but technically "different" plans. See James v. Life Ins. Co. of Am., No. H-12-2095, 2015 U.S. Dist. LEXIS 88350, at *7-8 (S.D. Tex. July 8, 2015) (overruling defendant's objections to admission of internal documents relevant to insurer's prior interpretation of plan terms). Because Unum's construction of the plan interpretation exception indeed operates to eviscerate its applicability, the Court declines to adopt such a strained reading.

existence and extent of a conflict of interest." See Crosby, 647 F.3d at 263.

In her opposition papers, Wittmann contends that all of her exhibits are admissible under Crosby. However, "in the interest of streamlining the Court's decision-making process," she identifies specified exhibits that she urges the Court to review in reaching a decision on the merits.[12] Therefore, the Court deems Unum's motion to strike to be unopposed as to the exhibits Wittmann does not address in her opposition papers. And as discussed immediately below, the Court finds that each exhibit highlighted

_____

[12] Specifically, Wittmann urges the Court to consider the following exhibits contained within her "Witness and Exhibit List," located at Rec. Doc. 90: Exhibit 20 (Tony T. Smith CV), Exhibit 21 (James H. Bress, MD CV), Exhibit 22 (Christopher Thorn Bartlett, M.D. CV), Exhibit 23 (Jana G. Zimmerman, Ph.D. CV), Exhibit 24 (William E. Davis, MD, CV), Exhibit 27 (Baseline Medical Curriculum: Fibromyalgia), Exhibit 32 (Total Compensation Frequently Asked Questions), Exhibit 33 (Details Explaining How Each Employee's PBI and/or Stock or Deferred Cash Award Was Calculated), Exhibit 37 (Stock Incentive Plan for 2012), Exhibit 41 (Training Material Pertaining to Self-Reported Symptoms for the Relevant Time Frame of April 2, 2014 to July 31, 2017 Including Subjective Symptoms Powerpoint), Exhibit 47 (Austin Pedigo Work Notes), and Exhibit 48 (Dr. Bress Compensation).

And because this case has been removed from the Court's trial docket, Wittmann also requests the Court to consider the following deposition excerpts in place of witness testimony: Rec. Doc. 96-33 (Deposition Testimony of Jennifer Wellman dtd. 9/12/18, pp. 27, 47-48, 79), Rec. Doc. 97-6 (Deposition Testimony of H. Austin Pedigo dtd. 9/12/18, pp. 17, 46), Rec. Doc. 122-2 (Report of William E. Davis, MD, MACP, FACR dtd. 5/12/18), Rec. Doc. 126-7 (Deposition Testimony of Jennifer Wellman dtd. 9/12/18, pp. 20, 61), Rec. Doc. 126-9 (Deposition Testimony of Lisa Montelongo-Connor dtd. 10/25/18), and Rec. Doc. 126-14 (Deposition Testimony of H. Austin Pedigo dtd. 9/12/18, pp. 22-33).

by Wittmann falls within at least one of the five exceptions to the general rule that judicial review in an ERISA action is limited to the administrative record.

(a)  *Fibromyalgia and Subjective Symptoms Training Materials*

The "Baseline Medical Curriculum: Fibromyalgia" training document (Exhibit 27) and compilation of training materials pertaining to self-reported symptoms (Exhibit 41) fall within the "plan interpretation" exception.  See <u>Crosby</u>, 647 F.3d at 263. Indeed, such materials were produced by Unum in response to Magistrate Judge Wilkinson's holding that such training materials "appear relevant to how [Unum] has interpreted the terms of this plan in the past."  <u>See</u> Order and Reasons dtd. 4/23/18.

(b)  *Compensation and Financial Information*

As a factor in determining whether Unum has abused its discretion in denying benefits, the Court must consider Unum's conflict of interest that arises from its dual role in evaluating claims for benefits and paying benefits.  <u>See</u> <u>Metro. Life Ins. Co. v. Glenn</u>, 554 U.S. 105, 108 (2008).  Exhibit 32 (Total Compensation Frequently Asked Questions), Exhibit 33 (Details Explaining How Each Employee's PBI and/or Stock or Deferred Cash Award Was Calculated), Exhibit 37 (Stock Incentive Plan for 2012), and Exhibit 48 (Dr. Bress Compensation) shed light upon how and to what extent Unum ties employee and consulting physician compensation to the company's overall financial performance.  More

21

specifically, they reveal a financial incentive of Unum employees, attorneys, and consulting physicians to bolster Unum's overall financial performance by denying or limiting benefit payouts. Accordingly, these exhibits are admissible under the conflict-of-interest exception.  See Crosby, 647 F.3d at 263.

    (c)   *Work Notes from Legal Issues Group Meeting*

      Exhibit 47 consists of "work notes" taken by H. Austin Pedigo, Assistant Vice President and Legal Counsel for Unum, during a legal issues group meeting.[13]   The content of these handwritten notes raises questions of a biased claims administration.  Specifically, they include a reference to the law firm Stone Pigman Walther Wittmann years before Ms. Wittmann retained the firm to handle her ERISA review.  According to Wittmann, her estranged husband is a Member of Stone Pigman.  Because a discussion of Stone Pigman bears no relevance to Wittmann's condition, this notation evidences a potential biased claims review.  As such, Exhibit 47 is admissible under the conflict-of-interest exception.

---

[13] In his Order and Reasons dated August 23, 2018, Magistrate Judge Wilkinson permitted Wittmann to discover these notes under the fiduciary exception to the attorney-client privilege, arising when an ERISA plan administrator consults with attorneys during the administration and review of a claim by a plan beneficiary, to whom the administrator owes a fiduciary duty.  See Wildbur v. ARCO Chem. Co., 974 F.2d 631, 645 (5th Cir. 1992) (citing 29 U.S.C. § 1002(21), 1103(a) and (c)(1)).

(d)   *Curriculum Vitae of Treating and Consulting Physicians*

Exhibits 20-24 contain the curricula vitae of Dr. William Davis, Dr. Tony Smith, Dr. James Bress, Dr. Christopher Bartlett, and Dr. Jana Zimmerman.  Section 2560.503-1(h)(3)(iii) of Title 29 of the Code of Federal Regulations, made applicable to plans providing disability benefits by Section 2560.503-1(h)(4), provides:

> [I]n deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment . . . the named fiduciary shall consult with a health care professional who has appropriate training and experience **in the field of medicine** involved in the medical judgment."

(Emphasis added).  Accordingly, the curricula vitae of Dr. Davis, Wittmann's treating rheumatologist; Dr. Smith and Dr. Bress, consulting physicians who reviewed Wittmann's claim before the October 3, 2014 denial; and Dr. Bartlett and Dr. Zimmerman, consulting physicians who reviewed her file during each appeal review, bear directly upon whether Unum complied with the ERISA procedural requirement that it "consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment."  See Crosby, 647 F.3d at 263 (noting that evidence as to "whether the plan administrator complied with ERISA's procedural regulations" is admissible).

(e)   *Deposition Excerpts*

Finally, portions of deposition testimony of three Unum employees are admissible under one or more of the <u>Crosby</u> exceptions. First, deposition testimony of Jennifer Wellman, Lead Appeals Specialist for Unum, regarding consultation with medical specialists in the review of claims pertains to Unum's possible failure to comply with Section 2560.503-1(h)(4). <u>See</u> Rec. Doc. 126-7. In addition, and as discussed in conjunction with Wittmann's motion to supplement, Wellman's deposition testimony regarding Unum's reliance on the Manual is admissible as evidence that allows the Court to resolve Wittmann's challenge to "the completeness of the administrative record." <u>See</u> <u>Crosby</u>, 647 F.3d at 263.

Furthermore, the deposition testimony of H. Austin Pedigo, in which he attests that performance bonuses comprise roughly 20% of his annual income, is probative of the extent of Unum's structural conflict of interest. <u>See</u> Rec. Doc. 97-6 (filed under seal). Mr. Pedigo also offers testimony regarding his experiences with meetings of the legal issues group, as well as the "work notes" he compiled at one such meeting. <u>See</u> Rec. Doc. 126-8 (filed under seal). This testimony also bears directly on the impact of Unum's structural conflict of interest.

Finally, Lisa Montelongo-Connor, Assistant Vice President and Legal Counsel for Unum, alludes in her deposition testimony to her

practice of relying on the Manual during her participation in the administration of claims.  She also notes that she was unaware of whether a record of attendees or notes were taken at any given legal issues group meeting, explaining that keeping notes is "not necessary in order to do [her] job."  See Rec. Doc. 126-9. Accordingly, this testimony is admissible under the "completeness of the administrative record" and "conflict-of-interest" exceptions.

Accordingly, for the foregoing reasons, IT IS ORDERED: that the plaintiff's motion to supplement is hereby GRANTED, and the defendant's motion to strike is GRANTED, in part, as unopposed,[14]

_____

[14] Unum's motion to strike is GRANTED, in part, as unopposed, as to the following exhibits contained in "Anne Wittmann's Witness and Exhibit List," located at Rec. Doc. 90: Exhibit 25 (Annual Incentive Plan), Exhibit 26 (Performance Plan 2017 – Benefits Operations Individual Contributions), Exhibits 28-31 (Proxy Statements – Notice of Annual Meeting of Shareholders from 2015-2018, respectively), Exhibit 34 (2014 Employee Performance Document), Exhibit 35 (Deferred Cash FAQs), Exhibit 36 (Coaching Session Documents), Exhibit 38 (2014 Employee Performance Plan QPS, Planning and Metrics Lead Appeal Specialist), Exhibit 39 (2014 Performance Goals (attorney)), Exhibit 40 (Annual Incentive Plan), Exhibit 42 (Benefits Research Information: Referral Considerations), Exhibit 43 (Physician Independent Contractor Agreement with Dr. Bress), Exhibit 44 (Dr. Benjamin Kretzmann CV), Exhibit 45 (Jeremy Jackson Performance Documents), Exhibit 46 (Jeremey Jackson's Work History), Exhibit 49 (Documents showing the total compensation to Dr. Bress from 2014 through 2017 and the compensation paid to him by Unum during those years), Exhibit 50 (Documents showing the total compensation to Dr. Kretzmann), Exhibit 51 (Benefits Research Information: Process Request), Exhibit 60 (Documents setting forth medical information relating to fibromyalgia), Exhibit 61 (Any documents identified as a result of ongoing discovery and/or investigation), Exhibit 62 (Any documents identified by Defendant), and Exhibit 63 (Any documents

and DENIED, in part.[15]

IT IS FURTHER ORDERED: that the submission date on the parties' pending cross-motions for summary judgment is hereby continued to February 6, 2019, on the papers. The following briefing schedule will apply:

- Wittmann is to submit supplemental briefing as to how the Court's admission of the Unum Benefits Claims Manual, specified Unum training documents, and Dr. Davis's expert

_____

for rebuttal purposes). Wittmann does not address these exhibits in her opposition papers and appears to concede that the Court need not consider them in reaching a decision on the merits.

[15] Unum's motion to strike is DENIED, in part, as to the following exhibits contained in "Anne Wittmann's Witness and Exhibit List," located at Rec. Doc. 90: Exhibit 20 (Tony T. Smith CV), Exhibit 21 (James H. Bress, MD CV), Exhibit 22 (Christopher Thorn Bartlett, M.D. CV), Exhibit 23 (Jana G. Zimmerman, Ph.D. CV), Exhibit 24 (William E. Davis, MD, CV), Exhibit 27 (Baseline Medical Curriculum: Fibromyalgia), Exhibit 32 (Total Compensation Frequently Asked Questions), Exhibit 33 (Details Explaining How Each Employee's PBI and/or Stock or Deferred Cash Award Was Calculated), Exhibit 37 (Stock Incentive Plan for 2012), Exhibit 41 (Training Material Pertaining to Self-Reported Symptoms for the Relevant Time Frame of April 2, 2014 to July 31, 2017 Including Subjective Symptoms Powerpoint), Exhibit 47 (Austin Pedigo Work Notes), and Exhibit 48 (Dr. Bress Compensation), and as to the following deposition excerpts that Wittmann requests the Court to consider in place of witness testimony: Rec. Doc. 96-33 (Deposition Testimony of Jennifer Wellman dtd. 9/12/18, pp. 27, 47-48, 79), Rec. Doc. 97-6 (Deposition Testimony of H. Austin Pedigo dtd. 9/12/18, pp. 17, 46), Rec. Doc. 122-2 (Report of William E. Davis, MD, MACP, FACR dtd. 5/12/18), Rec. Doc. 126-7 (Deposition Testimony of Jennifer Wellman dtd. 9/12/18, pp. 20, 61), Rec. Doc. 126-9 (Deposition Testimony of Lisa Montelongo-Connor dtd. 10/25/18), and Rec. Doc. 126-14 (Deposition Testimony of H. Austin Pedigo dtd. 9/12/18, pp. 22-33). These are the exhibits that Wittmann urges the Court to consider, all of which fall under one or more of the Crosby exceptions.

report impact this Court's analysis of whether Unum abused its discretion in denying her claim for long-term disability benefits.   Wittmann is to cite specific provisions of the Manual and/or training documents that she wishes the Court to consider.   Such supplemental briefing is due on January 2, 2019.

- Unum's response is due on January 22, 2019.

- Any reply is due on January 31, 2019.


New Orleans, Louisiana, December 12, 2018


MARTIN C. C. FELDMAN
UNITED STATES DISTRICT JUDGE